UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not present | Not present |

**Proceedings:** (IN CHAMBERS): DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (filed January 30, 2013)

## I. INTRODUCTION

On December 14, 2012, plaintiff Fred Fontana filed the instant action in this court against Carmen Harra ("Harra"), Carmen Harra Enterprises, Inc. ("Carmen Harra Enterprises"), Otmar Sibilo, Global Entertainment Movies, LLC ("Global Entertainment"), and Sibilo & Harra Entertainment, LLC ("Sibilo & Harra Entertainment"). The subject of this case is plaintiff's screenplay, entitled "Decoding Her Destiny – The Carmen Harra Story," which was registered with the U.S. Copyright Office on October 17, 2012, Registration No. TX 7-589-639. Plaintiff alleges that defendants are using his screenplay without his consent to make and promote a film about defendant Carmen Harra's life story ("the film").

On December 27, 2012, plaintiff filed his first amended complaint. Plaintiff's FAC alleges the following claims for relief: (1) copyright infringement, (2) breach of implied contract, (3) breach of contract, (4) fraud, (5) injunctive relief, and (6) declaratory relief. On January 30, 2013, defendants filed a motion to dismiss plaintiff's copyright claim. Plaintiff filed an opposition on February 11, 2013, and defendants replied on February 15, 2013.

The Court held a hearing on March 4, 2013, and tentatively indicated to the parties that defendants' motion was likely to be denied. After further considering the case law and the parties' arguments, however, the Court finds that the motion should be granted, for the reasons enumerated below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

## II.  BACKGROUND

Plaintiff Fred Fontana is a screenwriter and producer who has worked in the entertainment industry for over twenty years.  FAC ¶ 14.  Defendant Carmen Harra is a psychic, and has written several books and appeared on television.  Id. ¶ 20.  In December 2011, defendant Harra approached plaintiff to rewrite a screenplay about Harra's life story.  Id. ¶ 21.  Plaintiff and Harra orally agreed that plaintiff would write the script, and Harra would pay plaintiff an advance of $13,000.00, with unspecified additional fees to be paid out of the first funds invested in the film.  Id.  The parties also agreed that no portion of the script would be used by any defendant for any purpose unless and until plaintiff was paid the full amount that he was owed.  Id.  Defendant Harra gave two separate checks to plaintiff in the amounts of $10,000.00 and $3,000.00, which plaintiff cashed.  Plaintiff completed a draft of the screenplay ("plaintiff's screenplay") in February 2012, and delivered it to defendants, who were pleased with the result.  Id. ¶ 22–25.

Additionally, the parties agreed that plaintiff would be employed on the film as a "co-producer."  Id. ¶ 21.  In his capacity as co-producer, plaintiff prepared schedules and budgets for the film, and also contacted actors, agents, and managers.  Id. ¶ 38.  Plaintiff has been paid $5,000 for his work as a co-producer.  Id.

Plaintiff alleges that although he was promised a substantially greater amount of money for his screenwriting and production services, he has not been paid.  Id. ¶ 39.  Plaintiff alleges that he is to be paid between $140,000 and $180,000 for his script writing services, and between $60,000 and $170,000 for his production services, depending on the overall size of the film's budget.  Id. ¶¶ 26 – 27.  Plaintiff also claims rights to a portion of the film's net profits and gross revenues.  Id. ¶ 32.  Moreover, plaintiff alleges that his screenwriting fee was to be paid out of the first funds invested in the film, and that he has not received payment even though $1.1 million has been invested in the film.  Id. ¶¶ 36 – 37.  Additionally, plaintiff claims that defendant Harra has refused to sign a written document setting out the terms of their agreement regarding his screenwriting fees.  Id. ¶¶ 33 – 37.

Plaintiff alleges that defendant Harra has been attending film festivals and shopping plaintiff's screenplay to potential investors, producers, and other members of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

the entertainment industry without any authorization from plaintiff. Id. ¶ 40. Plaintiff also alleges that a film created using his screenplay will be released next year. Id. ¶ 44. Plaintiff seeks money damages and an injunction preventing defendants from using his screenplay to promote or produce the film.

## III. LEGAL STANDARD

### A. Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.    Supplemental Jurisdiction**

District courts may exercise jurisdiction over state law claims supplemental to their federal question jurisdiction only if those state law claims are so closely related to the federal claim that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Counterclaims are governed by Rule 13 of the Federal Rules of Civil Procedure, which categorize counterclaims as either compulsory or permissive. See Fed. R. Civ. P. 13. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims." Fed. R. Civ. P. 13(a)(1)(A). Supplemental jurisdiction generally automatically extends to compulsory counterclaims, because "[r]efusal to entertain a compulsory counterclaim might lead to its forfeiture." Baker v. Gold Seal Liquors, 417 U.S. 467, 468 n.1 (1974). The Ninth Circuit applies the "logical relationship test" to determine whether a counterclaim is compulsory. Pochiro v. Prudential Ins. Co., 827 F.2d 1246, 1249 (9th Cir. 1987). Applying the logical relationship test, the court must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

examine "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Id.

Permissive counterclaims include "any claim that is not compulsory." Fed. R. Civ. P. 13(b). Permissive counterclaims require an independent basis for subject matter jurisdiction. See Otsuka, 2008 WL 2037621, at *3 (citing Iglesias v. Mut. Life Ins. Co., 156 F.3d 237, 241 (1st Cir. 1998)). Where there is no independent basis for jurisdiction over a permissive counterclaim, the Court may still exercise supplemental jurisdiction over the counterclaim where the counterclaim and the claims in the action "'derive from a common nucleus of operative fact' and are such that a 'plaintiff would be expected to try them in one judicial proceeding.'" Trs. of the Constr. Indus. & Laborers Health and Welfare Trust v. Desert Valley Landscape & Maint. Inc., 323 F.3d 923, 925 (9th Cir. 2003) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996)); see Judge William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 8:1236 (The Rutter Group 2007).

## IV. DISCUSSION

Plaintiff asserts a single federal claim for copyright infringement. A copyright infringement claim has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991). Defendants do not contest whether plaintiff has pled these two elements. Instead, defendants assert an affirmative defense to copyright infringement, arguing that under the facts alleged by plaintiff, the Ninth Circuit's decision in Effects Associates, Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990) compels the result that defendants received a non-exclusive license to use plaintiff's screenplay under the parties' oral agreement.

The legal principles governing oral grants of non-exclusive copyright licenses are well established. Generally, a transfer of copyright ownership must be in writing. 17 U.S.C. § 204. Under 17 U.S.C. § 101, however, grants of a non-exclusive license to use a copyrighted work are not a "transfer of copyright ownership," and hence are not subject to the writing requirement. Effects Associates, Inc., 908 F.2d at 558. "[N]onexclusive licenses may therefore be granted orally, or may even be implied from conduct." M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A][7], at 10–53 (2012). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

Ninth Circuit has developed a three part test for determining whether a creator has issued an implied non-exclusive license.  Under this test, an implied license is found to exist if "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."  Assets Marketing Systems, Inc. v. Gagnon, 542 F.3d 748, 754 (9th Cir. 2008) (quoting I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)).

      When considering the third element of the Ninth Circuit's test, the licensor's intent, courts consider whether the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work.  Nimmer on Copyright § 10.03[A][7], at 10–53; see also Michaels v. Internet Entertainment Group, Inc., 5 F. Supp. 2d 823, 831 (C.D. Cal. 1998); Montwillo v. Tull, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008).  Moreover, the relevant intent is "the licensor's objective intent at the time of the creation and delivery," not subjective intent.  Assets Marketing Systems, Inc., 542 F.3d at 756.  Intent to create a license exists when an author creates a work with the knowledge and intention that it will be used by the licensee for a specific purpose. Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp., 742 F. Supp. 2d 1101, 1111 (C.D. Cal. 2010) (quoting SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 317 (S.D. N.Y. 2000)).

      The parties agree that defendants requested the creation of the screenplay, and that plaintiff created the screenplay and delivered it to defendants.  The only issue is whether plaintiff delivered the screenplay with the intent to allow defendants to use it to promote and create a film.  Plaintiffs sets out two explanations regarding why, taking the facts alleged in the complaint as true, he never manifested intent to grant a license.  First, plaintiff argues that he never intended to allow defendants to use the script until he received payment in full.  Second, plaintiff argues that facts about his ongoing business relationship with defendants demonstrate that he did not intend to allow defendants to use the screenplay to create and promote the film.  The Court considers these arguments in turn.

      **A.    Whether Non-Payment Demonstrates Lack of Intent to License**

      The Court first considers plaintiff's argument that intent to license is not present because plaintiff has not received full payment, and did not intend to allow defendants to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

O

use the screenplay unless plaintiff received full payment. According to defendants, this argument is foreclosed by the Ninth Circuit's decision in Effects Associates, 908 F.2d at 558 – 559. In Effects Associates, the defendant entered an oral agreement with the plaintiff, a small special effects company, providing that the plaintiff would create special effects footage to enhance action sequences in the defendant's film. Id. at 556. The parties did not discuss who would own copyright in the footage. Id. The plaintiff provided the action sequences, but the defendant believed that one sequence was of poor quality, and only paid half the promised amount for the sequence. Id. The defendant still used the sequence in his film, however, and the plaintiff then sued for copyright infringement, claiming that the defendant had no right to use the sequence without paying the full contract price. Id.

The Ninth Circuit found that the plaintiff had granted the defendant an implied license to use the sequence, reasoning that "[plaintiff] created a work at defendant's request and handed it over, intending that defendant copy and distribute it." Id. at 558. With respect to the plaintiff's argument that he did not receive full payment, the court reasoned "we [cannot] construe payment in full as a condition precedent to implying a license. Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." Id. at 559 n.7. The court found no evidence that the parties intended payment in full to operate as a condition precedent to implying a license, and therefore rejected the plaintiff's argument. The Court noted that this result did not leave plaintiff "empty-handed," however, because the plaintiff "retain[ed] the right to sue [the defendant] in state court on a variety of other grounds, including breach of contract. Id. at 559.

Defendant is correct that under Effects Associates, in cases where a plaintiff "has created a work at a defendant's request and handed it over," failure to provide payment in full generally cannot void an implied license arising from either conduct or an oral agreement. Id; see also Beholder Productions, Inc. v. Catona, 629 F. Supp. 2d 490, 494 – 495 (E.D. Penn. 2009). Failure to provide payment in full can only void an implied license if the agreement giving rise to the license contains a conditions precedent clause requiring full payment. Since such clauses are "disfavored," they only arise when they are set forth in "plain, unambiguous language." Effects Associates, 908 F. 2d at 559 n.7. While perhaps there are some factual circumstances in which an agreement arising from oral statements and course of performance could set out a conditions precedent clause in "plain, unambiguous language," plaintiff's sparse allegations have not plausibly alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

those circumstances here. Id.; see also Crispin v. Christian Audigier, Inc., 839 F. Supp. 2d 1086, 1091 (C.D. Cal. 2011) ("An oral agreement, like a written one, can have both express terms and implied terms. But when the agreement is oral, the lack of a writing is an evidentiary problem that makes it more difficult to determine what the express terms are."); Iqbal, 559 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[1]

Consequently, absent unusual circumstances, when a plaintiff enters an oral agreement to create a work for a defendant to copy or distribute, the plaintiff's proper course of action for seeking full payment is a breach of contract case, not a copyright infringement case. See id. at 559; Beholder Productions, Inc., 629 F. Supp. 2d at 495; Shaver, 74 F.3d at 778. The Court therefore rejects plaintiff's argument that no implied license exists because plaintiff has not received payment in full.

### B. Whether the Relationship Between the Parties Demonstrates Lack of Intent to License

The Court next considers plaintiff's argument that the business relationship between the parties shows that plaintiff did not intend to allow defendants to use his screenplay to create and promote the film. In support of this argument, plaintiff cites to case law setting out a three factor test for determining whether an intent to grant a non-exclusive copyright license is present. Under this test, courts consider the following factors:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts providing that copyrighted materials could only be used with the

---

[1] Plaintiff does not, for example, allege that he told defendants that they would be infringing his copyright if they used his screenplay in any way prior to providing him with payment in full. See Effects Associates, 908 F.2d at 559 n.7 (reasoning that no condition precedent clause existed because "Effects's president conceded at his deposition that he never told Cohen that a failure to pay would be viewed as copyright infringement.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

Assets Marketing Systems, Inc., 542 F.3d at 756 (citing John G. Danielson, Inc. v. Winchester-Conant Props, Inc., 322 F.3d 26, 42 (1st Cir. 2003); Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 516 (4th Cir. 2002)).  With respect to the first factor, the presence of an ongoing relationship, courts applying this test find that the existence of an ongoing relationship weighs against finding an implied license.

Plaintiff argues that applied to the facts of this case, this test leads to the conclusion that no implied license exists.  Specifically, plaintiff points out that in addition to his contribution to the film as a screenwriter, the parties also contemplated that he would have an "ongoing relationship" with defendants in his capacity as a producer on the film.  FAC ¶ 21.  Therefore, because the parties entered the agreement with the understanding that plaintiff would be involved with the film after he delivered the screenplay, plaintiff argues that no implied license exists to create and promote a film unless he remains involved in the project.  Since plaintiff is not currently working on the film as a producer or in another capacity, plaintiff concludes that defendants cannot rely on a non-exclusive license as a defense to his copyright claim.

Although plaintiff is correct that this test, applied strictly to the facts alleged, suggests that no license exists, it is unclear whether the test is applicable in this case.  The test was developed in a series of cases considering disputes about works created by architects.  See Nelson-Salabes, Inc., 284 F.3d at 516 (articulating the three factor test while discussing Johnson, Foad Consulting Group, Inc. v. Azzalino, 270 F.3d 821 (9th Cir. 2001), and Shaver).  Courts in these cases considered whether, by creating and delivering architectural drawings, the plaintiff-architects manifested intent to allow the defendants to retain other architectural firms to develop the plaintiffs' work in later stages of a project without further involvement of the plaintiff.[2]  In this factual context, the

---

[2] Nelson-Salabes, Inc., 284 F.3d at 515 ("the determinative question is whether NSI intended that Strutt utilize the NSI Drawings in constructing Satyr Hill, independent of any future involvement by NSI."); John G. Danielson, 322 F.3d at 32; Johnson, 149 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

existence of an ongoing relationship between the parties is a reliable indicator of their intent. Where an ongoing relationship exists, this suggests that the parties contemplated that a plaintiff-architect contributing drawings in initial stages of a project would also participate in future developments. See Nelson-Salabes, Inc., 284 F.3d at 516. The absence of an ongoing relationship, however, tends to suggest that the parties only intended for the plaintiff-architects' work to be a discrete contribution to a project that the defendant could use in connection with other architects in later phases of the project. See Shaver, 74 F.3d at 776 – 777 (architect's agreement circumscribed his role in the project and the scope of his work); see also Nelson-Salabes, Inc., 284 F.3d at 516 (describing Shaver and Foad as cases involving "task-specific contracts").

While the decisions establishing and applying this test do not limit its applicability to disputes between architects and developers, the decisions also do not suggest that the three factor test should be mechanically followed in all of the diverse factual settings where an author's intent to license is an issue. See, e.g., Danielson, 322 F.3d at 41. Moreover, recent decisions provide grounds for questioning whether the broad applicability of the test. In Estate of Hevia v. Portrio Corp., 602 F.3d 34, 41 – 42 (1st Cir. 2010), for example, the First Circuit held that the three factor test "does not fit this case" because the parties were former partners, not parties in an arms-length transaction. Rather than strictly following the test, the court in Estate of Hevia reaffirmed that "the copyright owner's intent is the touchstone for determining whether such an implied license has been granted," and held that on the facts before it, the existence of an ongoing relationship actually weighed in favor of finding the existence of an implied license. Id.

---

at 501("It is one thing for an architect to allow the owner to hire someone else to build a house from the architect's plans. It is quite another for the architect to allow a competitor to come in and claim the architect's work as his own. Put simply, Johnson's drawings were used in a way he never intended-i.e., a rival architect claimed them as his own work and completed the Jones house without Johnson's involvement."); Shaver, 74 F.3d at 771 (defendant retained another architecture firm to finish project using schematic design drawings prepared by plaintiff); Foad Consulting, 270 F.3d at 824, 826 ("the contract grants GenCom an implied license to use the revised plot plan to complete development of the project, to hire another firm to create derivative works using the revised plot plan for the purpose of completing the project, and to publish the resulting work.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

Similarly, the Ninth Circuit's use of the three factor test in <u>Assets Marketing Systems, Inc.</u>, 542, F.3d at 756, suggests that the test has limited applicability.  In <u>Assets Marketing Systems, Inc.</u>, the court considered whether a technical consultant who created software for a marketing company had, during his two year independent contractor relationship with the company, granted the company an implied license to retain and modify the software after their contract terminated.  <u>Id</u>.  While the court set out the three factor test and described the approach as "persuasive," it held that in the factual setting before the court, the ongoing relationship between the parties indicated neither an intent to grant or deny a license.  <u>Id</u>.

Accordingly, while the factors highlighted in <u>Nelson-Salabes, Inc.</u> and the related cases are useful to consider, courts should not inflexibly follow the <u>Nelson-Salabes, Inc.</u> test if it does not fit the facts of the case.  In particular, as <u>Assets Marketing Systems, Inc.</u> and <u>Estate of Hevia</u> demonstrate, the existence of an ongoing relationship between the parties may be probative of intent to license, lack of intent to license, or it may not be probative of intent at all.  Therefore, rather than mechanically applying the <u>Nelson-Salabes, Inc.</u> factors, the Court examines whether the alleged ongoing relationship between the parties is probative of intent given the factual circumstances of this case.

Here, the Court finds that the ongoing producer relationship contemplated by the parties does not indicate lack of intent to create a license.  As the court reaffirmed in <u>Estate of Hevia</u>, 602 F.3d at 41, "the copyright owner's intent is the touchstone for determining whether such an implied license has been granted," and here the question is whether plaintiff has alleged facts showing that he did not intend defendants to use the screenplay to create and promote a film.  Presumably, if the parties had agreed that defendants would use the screenplay to create and promote a film only if plaintiff also acted as a producer for the film, this fact could show that plaintiff never intended for defendants to use the screenplay to create a movie without his further involvement.  Crucially, though, plaintiff does not allege that there was any connection between his role as a screenwriter and his role as a producer.  Instead, his allegations setting out the oral contract between the parties state that the agreement to provide screenwriting services was separate from the agreement to provide production services.  <u>See</u> FAC ¶ 21 ("It was also agreed that, given his extensive production experience, plaintiff would be employed on the film as a co-producer.").  Without allegations stating a connection between the screenwriting and producing services agreements, the mere fact that the parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

contemplated an ongoing relationship does not show plaintiff's lack of intent to allow defendants to use the screenplay to create and promote a film.

Consequently, the three factor test does not fit this case, and as in Asset Marketing Services, 542, F.3d at 756, the alleged ongoing relationship between the parties, by itself, is not probative of their intent. Plaintiff may, however, amend his complaint to allege additional facts explaining why the contemplated ongoing relationship between the parties is relevant to plaintiff's intent.

### C. The Facts Alleged in Plaintiff's Complaint Show an Intent to Create a Non-Exclusive License

As explained above, plaintiff's allegations that he has not received full payment and that the parties contemplated an ongoing relationship do not show that a license does not exist in this case. The Court therefore reviews plaintiff's other allegations to consider whether he has alleged that his screenplay was created with the knowledge and intent that it would be used by defendants to create and promote a film. See Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp., 742 F. Supp. 2d at 1111.

The Court finds that plaintiff has alleged facts showing that the requisite intent is present. First, this intent is clear from the nature of the alleged oral agreement between plaintiff and defendants. Plaintiff alleges that defendant Harra hired him to write a "screenplay about her life story" and that he would be "paid out of the first monies that were invested in the film." FAC ¶ 21. This shows that from the outset of their agreement, the parties recognized that the screenplay was created with the intention that it would be used to create a film. Moreover, plaintiff's intent is apparent from the fact that he was hired to write a screenplay as opposed to some other form of writing. Screenplays are written to be made into movies, and it would be unusual if plaintiff created the screenplay believing that it was going to be used for some other purpose. If plaintiff wrote, delivered, and received partial payment for the screenplay intending that defendants would make some other use of the document, he must explain what that use is in his complaint.

Other facts alleged in plaintiff's complaint further demonstrate that he intended defendants to use his screenplay to make a film. For instance, plaintiff alleges that he performed "a substantial amount of production work on the film," including contacting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

actors, agents, and managers. FAC ¶¶ 25, 38. Plaintiff also alleges that he attended a meeting where plaintiff, defendants, and investors discussed how the film would be financed and how existing funds invested in the film would be held in trust. Id. ¶¶ 28 – 29. After that meeting took place, plaintiff alleges that he sent defendants a draft agreement providing that he would receive a portion of the profits of the film as compensation for his screenwriting services. Id. ¶ 32.

These facts unambiguously show that plaintiff wrote and delivered the script with the intent that defendants would use it to create and promote a film, and this intent gives rise to a non-exclusive license that provides defendants with a right to use the screenplay. As explained by the Ninth Circuit in Foad Consulting, reaching the contrary conclusion would yield an inequitable result. In Foad Consulting, the plaintiff-architect was hired and paid to create drawings and other documents for a development, but argued that work could not commence on the project until the plaintiff granted permission. Rejecting the argument, the Ninth Circuit explained:

> If accepted, Foad's claim that although it was hired to create documents for the project, GenCom had no right to use the documents to build the project, would allow architectural or engineering firms to hold entire projects hostage, forcing the owner either to pay the firm off, continue to employ it, or forego the value of all work completed so far and start from scratch. If the client did not want to pay the firm's ransom demand, the client might be willing to incur the costs of starting from scratch. Going back to the drawing board, however, may not be an option where necessary government approvals have already been obtained and the approving authority is unwilling to reconsider the issue, as happened here. Alternatively, the firm's ransom demand might be unreasonable.

Foad Consulting, 270 F.3d at 829 n. 12. These considerations apply equally here: on the facts alleged, plaintiff cannot maintain that although he was hired and paid to write a screenplay, defendants have no right to use the screenplay to create and promote a film.

Plaintiff argues that dismissing his complaint is improper because the parties' intent is a question of fact. However, "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." Weisbuch v. County of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10708 CAS (JCGx) | Date | March 12, 2013 |
|---|---|---|---|
| Title | FRED FONTANA V. CARMEN HARRA, ET AL. | | |

Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997). Plaintiff here has pled facts showing that he delivered the screenplay to defendants with intent to allow them to use it to create and promote a film, and because these facts give rise to an affirmative defense, defendants may raise this defense in a motion to dismiss.

Although plaintiff's allegations at present do not state a claim for copyright infringement, the Court grants plaintiff leave to amend his complaint. If additional facts show that plaintiff did not intend to allow defendants to use the screenplay to create and promote a film, plaintiff is entitled to put those facts before the Court. Otherwise, as explained in Effects Associates, 908 F.2d at 559, plaintiff has a claim arising out defendants' failure to provide timely payment in full, but it is a claim for breach of contract, not a claim for copyright infringement.

**V.      CONCLUSION**

In accordance with the foregoing, plaintiff's copyright claim is DISMISSED WITHOUT PREJUDICE. Plaintiff must file an amended pleading that corrects the deficiencies mentioned above by **April 8, 2013**. Failure to do so will result in dismissal of plaintiff's copyright claim with prejudice.[3]

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |

---

[3] This action was initiated in this Court pursuant to federal question jurisdiction based on plaintiff's copyright claim. If plaintiff does not submit an amended complaint adequately alleging a federal claim, the Court will dismiss the remaining state claims. See 28 U.S.C. § 1467(c)(3).